# Third District Court of Appeal

## State of Florida

Opinion filed April 24, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0285
Lower Tribunal No. 22-8069
_____

## Tower Hotel, LLC, et al.,

Appellants,

vs.

## City of Miami,

Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Zarco Einhorn Salkowski, P.A., and Robert Zarco, Michael Braunstein, and Jacky Beda, for appellants.

Victoria Méndez, City Attorney and Rachel S. Glorioso Dooley, Senior Assistant City Attorney, and Marguerite C. Snyder, Assistant City Attorney, for appellee.

Before LOGUE, C.J., and MILLER and BOKOR, JJ.

BOKOR, J.

Appellants, the owners of four properties designated as unsafe by the City of Miami's Unsafe Structures Panel,[1] appeal the trial court's denial of their motion for a temporary injunction against demolition. The owners allege that the trial court abused its discretion in finding that they lacked a substantial likelihood of success on their claims for breach of contract and equitable estoppel, which were predicated on the assertion that the City deliberately withheld issuance of necessary repair permits and prevented them from being able to timely complete repairs and bring the buildings into compliance.

## BACKGROUND

After all four property owners received final orders from the Unsafe Structures Panel directing them to repair or demolish the properties, three of the four owners entered into compliance agreements with the City, giving them additional time to complete repairs.[2] These agreements provided that "[a]ll building permits shall be obtained and paid for within sixty (60) calendar days after the [repair] plans have been submitted," and all repairs must be

---

[1] See § 8-5, Miami-Dade County Code; § 10-101, City of Miami Code.

[2] The four appellants in this case are Tower Hotel, LLC (located at 1460 NW 7th Street, Miami), Piedra Villas, LLC (located at 2614 SW 8th Street, Miami), El Shopping, LLC (located at 300 SW 12th Avenue, Miami), and Beatstik, LLC (located at 439 NW 4th Avenue, Miami). Beatstik did not enter a compliance agreement with the City.

2

completed within a limited time after issuance of the permits.[3]  Under these agreements, the City would be entitled to proceed with demolition immediately if the owners violated any of their time requirements, though the owners could also request extensions of time from a building official, and the owners were barred from undertaking any construction or repair work until the repair plans had been submitted and approved by the City and all required permits were obtained from the City.  The agreements also included an enforcement clause expressly providing that they are not enforceable against the City.

All four owners timely submitted repair plans within the time required by the agreements (in Beatstik's case, the repair or demolish order), and the City promptly approved the plans as to the three owners subject to the agreements.  However, the City never issued all necessary building permits, even after approval of the plans, and the owners were consequently unable to obtain permits or complete repairs within the requisite time after submission of the plans.  None of the owners requested extensions of time prior to expiration of their deadlines.

---

[3] Piedra Villas and El Shopping were given 90 days, and Tower Hotel was given 180 days.

3

After the City issued stop work notices and attempted to proceed with demolition, the owners brought the underlying complaint for breach of contract and equitable estoppel, alleging that the City breached its own obligations under the repair or demolish orders and compliance agreements by failing to timely issue the necessary building permits. The trial court initially granted a stay and an ex parte injunction against demolition, but later dissolved the stay and injunction and denied the owners' motion for a temporary injunction, finding that they lacked a substantial likelihood of success due to their failure to request extensions of time prior to the permit deadlines. This appeal followed.

## ANALYSIS

We review a trial court's order on a motion for temporary injunction via a hybrid standard whereby the court's factual findings are reviewed for abuse of discretion and its legal conclusions are reviewed de novo. See, e.g., Quirch Foods LLC v. Broce, 314 So. 3d 327, 337 (Fla. 3d DCA 2020). The party seeking the injunction must show: "(1) a substantial likelihood of success on the merits, (2) the unavailability of an adequate remedy at law, (3) irreparable harm absent entry of an injunction, and (4) that the injunction would serve the public interest." Fla. Dep't of Health v. Florigrown, LLC, 317 So. 3d 1101, 1110 (Fla. 2021). "The party seeking an injunction

4

must satisfy each element with competent, substantial evidence." Telemundo Media, LLC v. Mintz, 194 So. 3d 434, 436 (Fla. 3d DCA 2016).

We agree that the owners' inability to enforce the compliance agreements against the City precluded finding a substantial likelihood of success on their breach of contract claims.[4] Moreover, because Beatstik did not enter into a compliance agreement, did not receive its permits or complete repairs within the requisite time, and did not appeal the repair or demolish order or request an extension of time under the City and County codes,[5] the trial court correctly denied the temporary injunction as to Beatstik. See Frye v. Miami-Dade County, 2 So. 3d 1063, 1064 (Fla. 3d DCA 2009) (affirming denial of temporary injunction against demolition and finding failure to exhaust administrative remedies where owner failed to appeal or obtain permits for repair within time specified by Unsafe Structures

---

[4] While the City disputes the extent to which the compliance agreements impose an affirmative obligation for it to issue the building permits, it has conceded that the agreements are a binding contract that modifies the time limitations for compliance under the Miami-Dade County Code and City of Miami Code.

[5] See § 8-5(m)–(n), Miami-Dade County Code; § 10-101(m)–(n), City of Miami Code (providing that owners of unsafe structures may seek an extension of time from the Unsafe Structures Panel upon a written request and that an owner or interested party aggrieved by a decision of the Panel may seek judicial review by filing a notice of appeal in the circuit court within 30 days of rendition of the order).

5

Panel); <u>City of Miami v. Nationstar Mortg., LLC</u>, 206 So. 3d 52 (Fla. 3d DCA 2015) (same).

However, the enforceability of the compliance agreements against the City had no bearing on the other three owners' likelihood of success on the equitable estoppel claims, which were predicated not on the enforceability of the agreements, but their reliance upon the City's alleged representations that it would timely approve the permits.

> The doctrine of equitable estoppel may be invoked against a governmental entity where (1) a property owner in good faith reliance (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he or she acquired.

<u>Castro v. Miami-Dade Cnty. Code Enf't</u>, 967 So. 2d 230, 233–34 (Fla. 3d DCA 2007) (granting certiorari to quash enforcement of amendments to building code that would require demolition of illegal addition to property where City had repeatedly issued permits encompassing property addition and owners relied on permits as representations that addition was allowed). Here, after the three owners subject to the agreements complied with their initial deadline for submitting repair plans, their ability to comply with the second deadline for permit issuance depended solely on the City's approval, rendering compliance functionally impossible if the City delayed the permit issuance more than 60 days. Such a delay is exactly what the unrefuted

6

timeline shows, and interpreting the agreements in such a way as to allow the City to unilaterally prevent compliance would both be unreasonable and render much of the agreement meaningless. See, e.g., Super Cars of Miami, LLC v. Webster, 300 So. 3d 752, 755 (Fla. 3d DCA 2020) (describing the "cardinal principle of contract interpretation" by which "the contract must be interpreted in a manner that does not render any provision of the contract meaningless." (quotation omitted)). Although the trial court did not specifically address the likelihood of success on the estoppel claims,[6] it found that the owners "have demonstrated that at least some of the responsibility for their not being able to meet the deadlines they agreed to falls on the City due to delays in approvals, requirements for changes to submitted plans, and new requirements based on interim inspections." The extent to which these delays were in fact intentional has yet to be established, but would not preclude application of the doctrine of equitable estoppel at this juncture.[7]

---

[6] The trial court didn't examine this factor because it determined as a matter of law that the owners' failure to seek an extension of time barred the relief sought. We review a conclusion of law de novo, and we disagree with the trial court's interpretation of the contract as preventing equitable estoppel as a matter of law.

[7] Further, "a temporary injunction is based on limited evidence developed at a preliminary stage of the case," so "the parties are not required to completely prove their cases" at the injunction stage. Hasley v. Harrell, 971 So. 2d 149, 152 (Fla. 2d DCA 2007).

7

While we emphasize that "equitable estoppel . . . may only be applied against a governmental entity under exceptional circumstances," Castro, 967 So. 2d at 233, from the undisputed facts of the record at the time of the injunction hearing, allowing the City to proceed with demolition based on a reading of the compliance agreements that gave the owners no reasonable opportunity to comply with their deadlines would be inconsistent with the basic principles of fairness that the concept of equitable estoppel is founded upon. As this court has previously explained:

> Stripped of the legal jargon which lawyers and judges have obfuscated it with, the theory of estoppel amounts to nothing more than an application of the rules of fair play. One party will not be permitted to invite another onto a welcome mat and then be permitted to snatch the mat away to the detriment of the party induced or permitted to stand thereon. A citizen is entitled to rely on the assurances or commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds. . . .

Id. at 234 (quoting Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1334–35 (11th Cir. 2004)); see also Goodman v. Metro. Dade Cnty. Unsafe Structures Bd., 480 So. 2d 217, 218 (Fla. 3d DCA 1985) (granting certiorari to quash 180-day time limit for repair of unsafe structure where Board did not have competent evidence to support time limitation for "extensive" repairs). Based on the record before us, the onus was on the City after the owners fulfilled their initial obligations. The owners timely

8

submitted plans, which were approved. Based on those approved plans, the owners timely sought permits. Instead of issuing permits (or providing a legitimate reason why permits could not be timely issued), the City ran out the clock and then sought demolition.[8] Indeed, the trial court found that at least part of the delay was attributable to the City. Accordingly, based on the record and the factual findings made by the trial court, the three owners subject to the compliance agreements met their burden for a temporary injunction based on their equitable estoppel claims. We affirm the trial court's denial of a temporary injunction as to Beatstik, LLC, but, based on the facts present here, we reverse that portion of the trial court's order and remand for entry of a temporary injunction as to Tower Hotel, LLC, Piedra Villas, LLC, and El Shopping, LLC.

Affirmed in part, reversed in part, and remanded.

---

[8] The City posits in its answer brief that, "As Appellants would have it, they undertook to do no more than submit their building plans to the City and wait." But the stipulated timeline submitted to the trial court and part of the record on appeal contradicts this assertion. The owners submitted the plans, received approval, and then timely sought permits. The record also reflects that the owners timely responded to the City at every opportunity. The record further reflects that the City often changed its approvals of certain portions of the plans to denials without explanation, and otherwise did not act in good faith. It frustrates the purpose of a mitigation plan if the City can simply fail to act and then seek a draconian remedy of demolition based on nothing more than the owners' inability to comply with a deadline based on the City's own (in)action.

9